IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED FOOD AND COMMERCIAL WORKERS, LOCAL #23, | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Civil Action No. 10-1497 |
| GIANT EAGLE MARKETS COMPANY, | ) ) ) | |
| Defendant. | ) | |

MEMORANDUM

I

In this civil action, which was filed under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, Plaintiff, United Food and Commercial Workers, Local #23 ("Union"), seeks an order compelling Defendant, Giant Eagle Markets Company ("Giant Eagle"), to arbitrate two grievances pursuant to the terms of a collective bargaining agreement ("CBA"). Giant Eagle has filed a motion to dismiss the Union's amended complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion will be granted.

## II

In summary, the Union's amended complaint alleges the following facts which are not in dispute:

The Union is the collective bargaining representative of certain individuals employed by Giant Eagle at various Giant Eagle grocery stores and GetGo convenience stores in western Pennsylvania. The Union and Giant Eagle are signatories to two CBAs covering employees in two separate bargaining units – the Grocery employees and the Meat employees. The CBA at issue in this case, the Grocery Agreement, went into effect on June 26, 2010 and will remain in effect through June 25, 2013. (Docket No. 3-2).

On September 9, 2010, the Union filed a grievance alleging that Giant Eagle's denial of access by Union representatives to recently acquired non-union grocery stores in Brookville, St. Marys, DuBois and Titusville, Pennsylvania for the purpose of speaking to the employees about joining the union violated Article 2.1A (entitled "Recognition and Jurisdiction") and Article 28 (entitled "Separate Contracts") of the Grocery Agreement. (Docket No. 3-3). By letter dated September 10, 2010, the Union amended the grievance to include Giant Eagle's recently acquired non-union grocery store in Johnstown, Pennsylvania (collectively, "the New Grocery Store grievance").

(Docket No. 3-4). Five days later, Giant Eagle denied the New Grocery Store grievance. (Docket No. 3-5).

On September 22, 2010, the Union notified Giant Eagle of its intent to submit the dispute to binding arbitration pursuant to Article 15 (entitled "Grievance and Arbitration Procedures") of the Grocery Agreement. (Docket No. 3-6). Five days later, Giant Eagle notified the Union of its refusal to arbitrate the New Grocery Store grievance. (Docket No. 3-7).

On December 2, 2010, the Union filed a grievance alleging that Giant Eagle's denial of access by Union representatives to its non-union GetGo convenience stores violated Article 28 of the Grocery Agreement ("the GetGo grievance"). (Docket No. 3-8). By letter dated December 9, 2010, Giant Eagle notified the Union of its refusal to participate in grievance and arbitration procedures with respect to the GetGo grievance. (Docket No. 3-9).

The Union seeks an order compelling Giant Eagle to arbitrate the New Grocery Store grievance and the GetGo grievance, as well as attorneys' fees and costs.

III

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court abrogated the oft-repeated standard for dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim enunciated in Conley v. Gibson, 355

3

U.S. 41, 45-46 (1957), *i.e.*, that a complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Following Twombly, a plaintiff must "nudge[] [his or her] claims across the line from conceivable to plausible" in order to survive a motion to dismiss. 550 U.S. at 570. See also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008)("After Twombly, it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'").

IV

Unless the parties to a CBA clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate a particular dispute is to be decided by the court, not the arbitrator. AT&T Tech., Inc. v. Communications Workers of America, 475 U.S. 643, 649 (1986). In making that determination, a court is limited to construction of the arbitration clause and any contract provisions relevant to its scope, as well as any other "forceful evidence" suggesting that the parties intended to exclude the disputes at issue from arbitration. Rite Aid of Pennsylvania, Inc. v. United Food and Commercial Workers Union, Local 1776, 595 F.3d 128, 131-32 (3d Cir.2010), citing, E.M. Diagnostic Sys., Inc. v. Local 169, 812 F.2d 91, 95 (3d Cir.1987). A court is not to examine the

4

potential merits of the claim sought to be arbitrated except where the claim's merits and its arbitrability are inextricably intertwined. Rite Aid, supra, at 131-32, citing, Lukens Steel Co. v. United Steelworkers of America, 989 F.2d 668, 672 (3d Cir.1993).

A broad arbitration clause gives rise to a presumption of arbitrability that may be rebutted only by "the most forceful evidence of a purpose to exclude the claim from arbitration." AT&T, supra, at 650. However, "arbitration is still a creature of contract and a court cannot call for arbitration of matters outside the scope of the arbitration clause." Despite a broad arbitration clause, the underlying basis for the grievance must still arise out of a specific article of the CBA.[1] United Steelworkers of America v. Rohm and Haas Co., 522 F.3d 324, 332 (3d Cir.2008).

As noted previously, the Union's asserted right to enter the newly acquired non-union Giant Eagle grocery stores at issue to solicit membership is based on its interpretation of Articles 2.1A and 28 of the Grocery Agreement, and, as to the non-union Giant Eagle convenience stores at issue, on its interpretation of Article 28. These Articles of the Grocery Agreement provide:

---

[1] The arbitration clause in Article 15 of the Grocery Agreement is broad, providing for arbitration of "any differences or complaints over the interpretation or application of the terms of this agreement" that remain unresolved after exhaustion of the four-step grievance procedure. (Docket No. 3-2, p. 20). Thus, the presumption of arbitrability is applicable in this case.

* * *

## Article 2

### Recognition and Jurisdiction

  2.1A. The Company recognizes the Union as the sole and exclusive bargaining agent for Grocery, Bakery and Produce Department employees working in the Company's stores as clerks which are operated [or] which may be operated in the various counties of Pennsylvania, Ohio and West Virginia as defined by the jurisdiction of Local 23 – United Food and Commercial Workers International Union....

* * *

## Article 28
### Separate Contracts

  The Company agrees that any future store that replaces another Corporate store will be opened as Corporate and the Company will not use store closing language (Article 9.23) on the closing store. Any other new stores that open will be opened under separate contracts with separate seniority. This paragraph does not restrict the Company's right to franchise stores, nor does it limit in any way any of the other provisions in Article 9.23.[2]

* * *

(Docket No. 3-2, pp. 1 and 39).[3]

  In support of its motion to dismiss, Giant Eagle relies heavily on the decision of the Third Circuit in Rite Aid, supra, which involved very similar facts. In that case, the employer

---

[2] Article 9.23 is referred to as the "Store Closing Article" in the Grocery Agreement and addresses the manner in which employees of a Giant Eagle grocery store that is closing will be placed in other positions on a company-wide basis based on seniority. (Docket No. 3-2, pp. 13-14).

[3] With respect to Article 28 of the Grocery Agreement, there is no dispute the non-union grocery stores in Brookville, St. Mary's, DuBois, Titusville and Johnstown, Pennsylvania that were recently acquired by Giant Eagle are "new" stores. None of the stores "replaced" existing Corporate stores. (Docket No. 3, Exh. C).

6

("Rite Aid") and the union were signatories to three CBAs covering three regions of Rite Aid stores in eastern Pennsylvania.[4] In 2007, Rite Aid acquired a chain of drugstores formerly operated by Brooks Eckerd. When union representatives attempted to enter six of the new stores in September 2007 to speak to employees about joining the union, Rite Aid denied them entry. The union filed grievances claiming a right to access newly-acquired stores within the jurisdiction of each CBA. Rite Aid denied the grievances on the basis of a policy against solicitation. The union then referred the grievances to arbitration pursuant to the CBAs. The grievances were consolidated and a date for arbitration was set.

Prior to the arbitration, Rite Aid filed a declaratory judgment action in district court seeking a declaration that the grievances were not arbitrable under the parties' CBAs, and the parties filed cross-motions for summary judgment. Rite Aid argued that the grievances were not arbitrable under Section 11.4 of the CBAs, which provided: "No grievance shall be filed by the associate or the Union, nor need the Employer entertain any grievance that does not involve the interpretation of any provision of this Agreement." In response to this argument, the union cited three provisions of the CBAs to support the

---

[4] In all relevant respects, the CBAs in Rite Aid were identical. 595 F.3d at 130 n.1.

7

grievances' arbitrability. The union argued that because its grievances arose under at least one of the three provisions, arbitration was required regardless of the merits of the grievances.

The motion of Rite Aid for summary judgment was granted and the cross-motion of the union was denied. The district court concluded that the grievances did not involve interpretation of any provisions in the CBAs, and, therefore, the grievances were not within the scope of the CBAs' arbitration clauses. The union appealed and a majority of the Third Circuit panel affirmed the district court's judgment.[5]

One of the three provisions in the CBAs on which the union in Rite Aid relied to support its demand for arbitration was the "recognition clause," which provided:[6]

> The Employer recognizes the Union as the sole and exclusive bargaining agent for the purpose of bargaining in the Bargaining Unit in respect to rates of pay, wages, hours of employment, and other conditions pertaining to employment....

---

[5] The Third Circuit panel in Rite Aid consisted of Circuit Judge Leonard I. Garth, who authored the majority opinion, Senior Circuit Judge Jane R. Roth, and Circuit Judge Thomas L. Ambro, who filed a dissenting opinion.

[6] The other two provisions were the "observation" clause which provided for the right of union officials to enter Rite Aid stores covered by the CBAs to ensure that the CBAs were being observed, and the "privileges" clause which required Rite Aid to continue employee privileges that had been granted since its acquisition of the stores. The majority concluded that neither provision was sufficiently implicated to require Rite Aid to arbitrate the union's grievances. 595 F.3d at 134-35.

8

In rejecting the union's assertion that its grievances involved interpretation of the recognition clause, and, therefore, were arbitrable, the majority stated:

\* \* \*

> In our view, a right of Union access to newly acquired stores simply cannot be plausibly derived from the recognition clause. The recognition clause merely establishes the Union's position as Rite Aid's employees' exclusive bargaining agent and defines the range of matters subject to bargaining. It does not describe or purport to include anything resembling the Union's claimed right to access newly-acquired stores. The District Court correctly concluded that the recognition clause is not susceptible of an interpretation which would yield such a right.

\* \* \*

595 F.3d at 134.[7]

Like the recognition clause in Rite Aid, Article 2.1A of the Grocery Agreement declares the Union to be the exclusive bargaining agent for certain Giant Eagle employees and does not address the right of the Union to access newly-acquired non-union stores to solicit membership. Under the circumstances, the Court agrees with Giant Eagle that Rite Aid precludes a finding that the Union's demand for arbitration of the New

---

[7] With respect to the dissent in Rite Aid, Circuit Judge Ambro disagreed with the majority's consideration of the merits of the union's grievances in determining that they were not arbitrable. In Circuit Judge Ambro's opinion, the grievances were arbitrable because they were "within the zone of interests that have received protection in the collective bargaining agreement." In support of this conclusion, Circuit Judge Ambro cited the Third Circuit's decision in E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Bhd of Teamsters, 812 F.2d 91, 92 (3d Cir.1987). 595 F.3d at 137-51.

9

Grocery Store grievance based on Article 2.1A of the Grocery Agreement is plausible.

Similarly, the Court concludes that Article 28 of the Grocery Agreement cannot plausibly serve as a basis for the Union's demand for arbitration of the New Grocery Store grievance and the GetGo grievance based on Rite Aid. As noted by Giant Eagle, Article 28 "contains no language that even arguably 'describes or purports to include anything resembling the Union's claimed right to access newly-acquired stores.'" (Docket No. 6, p. 7). Rather, Article 28 addresses the manner in which Giant Eagle employees affected by a store closing will be placed, *i.e.*, based on seniority as set forth in Article 9.23 – the "Store Closing Article", and specifically states that new stores will be opened under separate CBAs with separate seniority.[8] By its very terms, the Grocery Agreement does not apply to newly-acquired Giant Eagle stores.

The Union attempts to distinguish the Third Circuit's decision in Rite Aid from the present case on two grounds: (1) the difference in the procedural posture of the cases; and (2) the difference in the language of the arbitration clauses at

---

[8] As Giant Eagle notes, the Union's reliance on Article 28 to support its demand for arbitration is more misplaced with regard to the GetGo grievance because the Union has not alleged that the non-union GetGo convenience stores to which it seeks access are limited to "new" GetGo convenience stores. (Docket No. 6, p. 8 n.3).

10

issue. After consideration, the Court finds both arguments unpersuasive.

With respect to procedural posture, the Union notes that the district court's decision in Rite Aid was based on cross-motions for summary judgment that were supported by affidavits. In contrast, Giant Eagle has filed a motion to dismiss before either party "has had the opportunity to develop the record regarding the facts of the binding past practice relied upon by Local 23," *i.e.*, the access and neutrality that had been accorded to the Union by Giant Eagle at new stores in the past. According to the Union, the parties must be given a full opportunity to develop a factual record through discovery before the arbitrability issue can be decided.

In Rite Aid, the declaration of the union's executive vice president which was submitted in support of the union's cross-motion for summary judgment averred that Rite Aid "had, for decades, permitted [Union] representatives ... to have access to both newly acquired and newly opened Rite Aid stores within the geographic jurisdiction of [the] CBA[], for the purpose of soliciting Rite Aid's employees for membership in [the Union]." 595 F.3d at 138 n.11. Despite this uncontroverted evidence, the majority in Rite Aid did not find the parties' dispute arbitrable because the context of the articles of the CBAs on which the union relied to argue the arbitrability of the dispute

"ha[d] nothing to do with the Union's right to organize or to be recognized in newly-acquired stores." 595 F.3d at 135.

Because Articles 2.1A and 28 have "'nothing to do with the Union's right to organize or to be recognized in newly-acquired stores,'" a similar result is required in this case. (Docket No. 15, p. 2). Thus, further development of the factual record is unnecessary and the difference in the procedural posture of this case and the Rite Aid case does not preclude the dismissal of this action under Fed.R.Civ.P. 12(b)(6).

Turning to the Union's second basis for distinguishing the Rite Aid decision, there can be no dispute that the language of the arbitration clauses in this case and the Rite Aid case differ. The arbitration clause in the parties' CBAs in Rite Aid stated that "[n]o grievance shall be filed by the associate or the Union, nor need the Employer entertain any grievance that does not **involve the interpretation of any provision of this agreement**" (emphasis added), while the arbitration clause in the Grocery Agreement provides for arbitration of "**any differences or complaints over the interpretation or application** of the terms of this agreement" (emphasis added). The Court agrees with Giant Eagle, however, that the difference in language does not change the result because the past practice upon which the Union relies to argue that the parties' dispute is arbitrable is unrelated to either the interpretation or the application of

Articles 2.1A and 28 of the Grocery Agreement. (Docket No. 15, pp. 2-3). Simply put, neither article addresses the right of the Union to access Giant Eagle's newly acquired non-union stores to speak to employees about joining the Union. Accordingly, Giant Eagle's motion to dismiss under Fed.R.Civ.P. 12(b)(6) will be granted based on the analysis of the majority in Rite Aid.

_William L. Standish_
William L. Standish
United States District Judge

Date: May ___, 2011